The Chancellor.
Adam Smith, of the county of Somerset, by his last will and testament, bearing date on the 5th December, 1823, devised the use of a moiety of the residue *87 of lais real estate to his daughter Frances, the wife of John Van Nest, for her life, and on her death to the use of her husband, John Van Nest, for his life, and on the death of the husband, to his children by the said daughter of the testator in fee; and the testator by his will directed, that when the said land should belong to his said grandchildren, the surviving executors or executor might make sale of the said real estate, in order to make an equal division among the said grandchildren of the proceeds thereof, unless they could all agree upon a division of their parents’ share. The testator died seized of the land so devised in the year 1825. Frances Van Nest, the daughter of the testator, survived her husband, and died on the 29th of January, 1857, leaving three children and the issue of a deceased daughter surviving. The complainant, as one of the children of John and Frances Van Nest, is entitled to one-fourth part of the lands so devised.
Prior to the death of Francos Van Nest, all the executors named in the will had died. On the 23d of February, 1857, the defendant, Peter L. Sebring, took out letters of administration de bonis non with the will annexed upon the estate of the said testator, and took upon himself the administration and settlement of said estate.
On the 26th of February, 1858, the land was exposed to sale at public vendue by the administrator, and was struck off and sold to Abraham Sebring, one of the defendants and a son of the administrator, for thirty dollars an acre.
The bill is filed to set aside the said sale on the grounds—
1. That the administrator had no authority to make the said sale — and
2. That the said sale -was fraudulent, and made by collusion between the administrator and his son.
I. The first objection to the validity of the sale is, that the power vested in the executors to make sale of the real estate in question was not an absolute or unconditional power, but contingent upon the failure of the devisees to agree among *88 themselves upon a division; and that an unsuccessful attempt to make a division by the devisees was a prerequisite to the power of sale being vested in the executors.
The power of sale is vested by the terms of the will. The exercise of the power is contingent upon the failure of the devisees to agree upon a division. The language of the will is, that the surviving executor or executors may make sale of the real estate, in order to make an equal division among the devisees, unless they can all agree upon a division. The exercise of the power by the executors is contingent upon the ability or inability of all the devisees to agree upon a division. The inability may be legal, resulting from legal disability, or it may be voluntary. It is manifest, upon the face of the bill, that the devisees cannot agree upon a division. Part of them are infants. There is no ground for assuming that the testator intended to provide merely for the case of a disagreement as to the mode of division among parties Competent to contract. It is more reasonable to presume that he intended to provide, also, for cases of legal disability to make the agreement. The case therefore falls both within the language and the intention of the testator. Hnder such circumstances, there can be no necessity for an attempt at agreement among the devisees as a prerequisite to the exercise of the power by the executors.
It was suggested, upon the argument, that the estate of the testator, Adam Smith, had been fully administered by his executors, and their final accounts settled; that after their death there were no debts of the testator to be paid, and no assets to be administered; and that consequently there was no authority in the surrogate to grant letters of administration for the mere purpose of executing the power in question. It is enough to say, in answer to this objection, that it is neither suggested by the bill nor sustained by competent evidence; on the contrary the bill and answer both allege that Peter L. Sebring took out letters of administration de bonis non mm testamento annexo upon the estate of *89 the testator, and that ho has since taken upon himself the settlement of the estate.
If, therefore, the objection to the legality of the grant of letters of administration be well founded, both in law and in fact, upon which it is not designed to intimate any opinion whatever, it is clear that it cannot now bo drawn in question in the progress of this cause.
The power vested by the will in the executors to sell and convey real estate, is by the statute conferred upon the administrator cum testamento annexo, and a sale and conveyance by him is declared to be as valid and effectual as if made by the executors named in the will. Nix. Dig. 258, § 20.
II. It is objected that the sale made by the administrator is actually or constructively fraudulent.
The bill charges, among other circumstances of fraud, that there was collusion between the administrator and his son, to whom the property was sold, and that the administrator fraudulently furnished to the son information which was withheld from other bidders at the sale. On filing the bill, an injunction issued to restrain the delivery of the deed to the purchaser. The son has been examined as a witness, and it appears satisfactorily, from his evidence, that lie purchased the promises not by collusion with his father for his own benefit, but that they were in fact purchased for the benefit of his father. The sale took place on the 26th of February. By the conditions of sale, the purchase money was to be paid in cash within thirty days, and possession to be given on the first day of April. The deed was executed, and delivered to the son on the eighth of March, ten days after the sale, and twenty days before the time limited for the payment of the purchase money. The purchaser paid no part of the consideration, but gave a mortgage to his father for the whole amount, being fourteen hundred and ten dollars^ On the same day he conveyed the property back to his father, at the same price at which it was struck off to *90 him. Both deeds were executed before the service of the injunction and before the time limited by the conditions of the sale for the payment of the purchase money and the delivery of the deed. The evidence of the son leaves no room for doubt that in point of fact the administrator became indirectly the purchaser at his own sale, in violation of the well settled doctrine of equity. This objection must prove fatal to the sale. Den v. Wright, 2 Halst. 175; Den v. McKnight, 6 Halst. 385; Scott v. Gamble, 1 Stock. 235; Mulford v. Bowen, 1 Ibid. 797; Obert v. Obert, 2 Stock. 98, 1 Beas. 423; Mulford v. Minch, 3 Stock. 16.
The complainant, however, is not entitled to relief upon this ground in the present shape of the pleadings. It is well objected, on the part of the defendant, that the case thus made is not the case made by the bill nor within the issue between the parties. Before a decree can be made against the defendant on this ground it should be distinctly charged in the bill, and the defendant have an opportunity of meeting the charge by his answer. Gresley’s Eq. Ex. 160; Story’s Eq. Pl., § 28, 36; Gordon v. Gordon, 3 Swanst. 472; Parsons v. Heston, 3 Stock. 150.
If the complainant proposed to rely upon this ground, the proper course would have been, immediately upon the disclosure of the facts, to have applied for leave to amend his bill according to the truth of the case. But as the real truth was not disclosed by the defendant’s answers, and was not discovered until the evidence was nearly closed, it would be in accordance with the practice of the court, even at this stage of the cause, to permit an amendment of the bill upon terms, if it were necessary to the ends of justice.
The fact that the administrator became himself the purchaser at his own sale, cannot be relied on as a substantive ground of relief, and must be laid out of view, except so far as it may tend to give character to the conduct of the administrator in regard to the sale, and thus tend to substantiate the charge of fraud. Story’s Eq. Pl., § 28.
The case made by the complainant’s bill is, that the do *91 fendant, claiming power by virtue of his office as administrator to make sale of property in which the complainant was jointly interested with himself and others, exposed the property for sale without notice to the parties interested, so conducted himself in the discharge of his office as to discourage competition, and thereby to cause the property to be sold at a great sacrifice, in fraud of the right of the complainant.
In support of the charge it is satisfactorily shown by the evidence, that the defendant not only failed to take such measures as would secure the best price for the property, but that the course adopted by him was calculated, if not designed, to operate against the sale, and to prejudice the interests of those whose rights he represented.
The parties interested with him in the property, and owning three-fourths of the entire interest, were nonresidents of the state, and some of them infants incapable of protecting their interests. It does not appear that he gave any of them notice of his determination to sell the property or conferred with them respecting their interests. He advertised the property for sale at an unusual hour, ten o’clock in the morning, and caused it to be struck off, according to the weight of the evidence, about twelve o’clock, or, as all the evidence shows, before one o’clock, and before some persons who purposed bidding had arrived at the place of sale. It is admitted that the case does not fall within the purview of the statute, which requires all sales of real estate made under a public statute or the direction of a court to be made between the hours of twelve and five o’clock. Nix. Dig. 728, § 28. But this is the time at which most public sales by administrators, sheriffs, and other officers are required to bo made. It is the usual time at which all public sales are made, and a departure from that time was calculated to mislead the public, and is important, in connection with other facts, as showing the animus with which the proceeding w'as conducted.
It is in evidence that, previous to the sale, doubts arose *92 whether, under the provisions of the will, the administrator could make a good title. A party wishing to purchase testifies that he took the opinion of eminent legal counsel on the subject, who gave an opinion adverse to the title. This fact was brought to the knowledge of the administrator. At the time of the sale, the question was publicly discussed in the presence and hearing of the bidders and those desirous of bidding, and the fact that such opinion had been given was there stated. It was not questioned or denied that such opinion had been given, and no step was taken by the administrator to counteract its natural influence upon the minds of those desirous of purchasing. It is clear, from the evidence, that serious doubts were entertained by those who were present at the sale whether a good title could be made by the administrator. Under such circumstances, justice required that the sale should have been adjourned, or some measures adopted to assure the public mind and give confidence to those desirous of purchasing. The administrator would do neither. He refused to modify the conditions of sale so that a purchaser might be relieved against the penalty of a resale, and a liability for all deficiencies in case the title should not prove satisfactory. The language and conduct of the administrator was certainly not calculated to diminish the difficulty, if it did not increase it. He caused, it is true, the will to be read, but that could have answered no good purpose, for it is not pretended that the will, by its terms, gave any authority to the administrator to make the sale.
It further appears that the conditions of sale were not only harsh but unusual. One of the conditions was, that “ all property purchased at this sale to be for cash within thirty days, in lawful currency of the United States. The effect of such a condition upon a sale made in February, 1858, so soon after the great commercial crisis of 1857, and during its consequent embarrassments, is sufficiently obvious. The administrator was applied to before the day of sale to modify that condition and to extend the credit. He was told ihat, *93 with such terms and without an undoubted title, he would not get a bid for the property. He refused to modify the condition, upon the ground that he was administrator, and might be called upon to pay the money. And yet, having sold the property to his own son, he took a mortgage for every dollar of the purchase money. These measures produced their natural result. Bona fide purchasers, who attended the sale for the purpose of buying the property at sixty dollars an acre, were deterred from bidding, and the property was struck off at half that price.
It would be a reproach to the administration of justice, if a sale by an administrator having in charge the interests of others, conducted by such means and with such results, should be permitted to stand.
It was properly suggested, on the arguments, that this is not a sale under a decree of this court, and that, therefore, the power of this court cannot be invoked to the same extent nor precisely upon the same principle upon which it interferes to regulate sales made by virtue of its own process. But the jurisdiction of the court is by no means confined to this class of cases. It extends to all sales made by administrators, trustees, agents, and public officers, acting either by authority of law or by virtue of the process of this or of any other court. And where the authority to make the sale is shown, the question respecting the fairness of the sale will then stand on the same principles with any other transaction in which fraud is charged. Stead’s Executors v. Course, 4 Cranch 413; Hays v. Doane, 3 Stock. 84; Woods v. Monell, 1 Johns. Ch. R. 503.
The complainant is entitled to her decree setting aside the sale with costs.